[Crim. No. 1203. First Appellate District, Division Two.—April 16, 1925.]

## THE PEOPLE, Respondent, v. DEE GIBSON, Appellant.

[1] CRIMINAL LAW—MURDER—MANSLAUGHTER—VERDICT—EVIDENCE.— In this prosecution for murder but which resulted in a conviction of defendant for manslaughter, the evidence was sufficient to support the verdict.

[2] ID.—MISCONDUCT—ABSENCE OF ASSIGNMENT OF ERROR—INSTRUCTION — APPEAL. — In such prosecution, alleged misconduct of the district attorney in stating during the trial that counsel for defendant was nodding to a witness upon the stand must be disregarded upon appeal, where counsel for defendant denied this in court, explaining that he could not hear the witness and was putting his head forward to hear her, and the district attorney then said that the nodding was done unconsciously, perhaps, and defendant's counsel did not assign the incident as misconduct nor request an instruction to the jury to disregard it.

[3] ID.—EXCLUSION OF EVIDENCE—ABSENCE OF ERROR.—In such prosecution, no error was committed in excluding the testimony of a witness that a negro who accompanied deceased to the scene of the homicide and remained outside the house where the homicide was committed was armed with a revolver on the night of the homicide, where there was no evidence that the said negro assaulted the defendant and nothing to suggest that defendant fired the shot which killed deceased because he knew said negro was armed.

---

(1) 30 C. J., p. 316, n. 68.    (2) 17 C. J., p. 62, n. 94.    (3) 30 C. J., p. 193, n. 54.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Louis H. Ward, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edmond H. Lomasney for Appellant.

U. S. Webb, Attorney-General, and Charles A. Wetmore, Jr., and Wm. F. Cleary, Deputy Attorney-Generals, for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment of conviction of the crime of manslaughter. He had been charged by information with murder, but the jury found him guilty of the lesser crime.

[1] It is contended that the evidence is insufficient to sustain the verdict. There is a conflict in the record, not only as between testimony of witnesses, but in possible inferences to be drawn from much of that testimony. Had the jury chosen to believe all testimony in the record and drawn all inferences therefrom most favorable to the defendant, they would have had substantial reasons for acquitting the defendant upon the theory that he had killed Sanford in self-defense; but the jury has chosen to disregard such testimony and such inferences and to accept as facts the testimony appearing in the record which is inconsistent with the theory of the defense. We shall review, briefly, such testimony, and its presence in the record is a complete answer to appellant's position upon this aspect of the case.

On January 16, 1924, defendant rented a flat at 2300 California Street, San Francisco. He testified that he intended to move into it with his family when his rent was due upon premises at 561 Cedar Street, where he was living at the time of the homicide. He had rented out rooms in this flat to various persons, among whom was a woman, Alma Jackson, over whom the killing occurred. All persons concerned in this tragedy are negroes. Alma Jackson, before going to live at defendant's flat, had been living with Willie Sanford. She had left him; he had refused to give up her clothing; she had secured a warrant for his arrest, and in response to this, he had returned her clothes. Sanford was not satisfied, evidently, to end the relationship between himself and Alma Jackson and he met the defendant and complained about the conduct of the Jackson woman in leaving him and trying to have him arrested and inquired as to how long she had been living in the California Street flat. Defendant told him that the woman had said she did not wish

to have anything to do with Sanford and had asked him (defendant) not to permit Sanford to come to the house, as she was afraid of him. Sanford said he would go up there and run the woman out of the house. It also appears that Sanford threatened to kill defendant, but defendant stated that he was not afraid of him and did not take his threats seriously. On the night of February 1, 1924, several women were visiting at the flat and defendant was spending the evening there. About midnight Sanford came to the house and wanted to see the Jackson woman. Defendant went to the door and refused to allow Sanford to enter. Sanford was accompanied by another negro, who remained outside while Sanford forced his way into the hall. There is abundant evidence from which it may be concluded that Sanford had no weapon of any kind with him. The two men engaged in a "scuffle," in the hall, defendant trying to eject Sanford and Sanford struggling to remain in the house. Defendant was armed and in the struggle drew his revolver and shot Sanford. It is true that he testified at the trial that Sanford had a gun and was endeavoring to shoot him (defendant), but this testimony is in conflict with his statement to the police shortly after the shooting, and contrary to the inference to be drawn from the fact that no weapon of any kind was found in the premises after Sanford was shot, although the police came there shortly thereafter, and Sanford was injured so seriously as to be unable to move or make away with any weapon which he might have had. In support of the verdict there is also the dying statement of Sanford, in part as follows: "D. Gibson shot me over that woman, Alma Jackson, colored woman. I was living with her at 2503 Bush Street. Happened inside of house 2300 California. She was living with me and left me for D. Gibson. Mrs. Alma Jackson was in room. We had words. I had no gun, no revolver, no razor. I did not strike D. Gibson or attack him or attempt to attack him. I knocked at the door of room at 2300 California Street. He opened the door. I asked for Mrs. Alma Jackson and Mr. Gibson told me to beat it. He said, 'You can't talk to her.' I said I just want to tell her about her stockings. He grabbed me, Gibson tore my coat, could not hold me, drew his pistol and shot me. Pistol was in his bosom. He fired one shot at me."

There is testimony in the record presenting a different picture of the struggle and appellant has discussed that testimony in his brief. We shall not review it here, because in so far as it is in conflict with the foregoing, the jury was entitled to disregard it and we are bound by their view of the parties and their motives.

[2] Appellant complains of alleged misconduct of the district attorney in stating during the trial that counsel for defendant was nodding to a witness upon the stand—Alma Jackson. Counsel denied this in court, explaining that he could not hear the witness and was putting his head forward to hear her. The district attorney then said that the nodding was done unconsciously, perhaps. That was all there was to the incident and counsel for defendant did not assign it as misconduct nor request an instruction to the jury to disregard it. Under this state of fact, we must disregard it upon appeal.

The only other point urged upon the appeal is the contention that error was committed in refusing to admit the testimony of a witness, Reese, that a negro called "Stickhorse" and who accompanied deceased to the scene of the homicide and remained outside the house was armed with a revolver on the night of the homicide. The witness was asked: "Was 'Stickhorse' or Sanford armed with any deadly weapon, if you know?" The question was objected to as complex. Counsel was directed by the court to ask separate questions as to each of these persons. He then asked: "Was Sanford armed with any deadly weapon, if you know? A. Not that I know of, sir." The witness was then asked if "Stickhorse" was armed, objection was made upon the ground of incompetency, irrelevancy, and immateriality, and such objection was sustained.

[3] No authorities are cited by appellant which would support the admission of this testimony. There is no evidence in the record that "Stickhorse" assaulted the defendant and nothing to suggest that defendant fired the shot which killed Sanford because he knew "Stickhorse" was armed. The jury was justified in believing that "Stickhorse," armed or unarmed, did not come into the house and took no part in the struggle, and that deceased was entirely unarmed at the time he was shot by defendant.

The judgment is affirmed.

Preston, J., *pro tem.,* and Nourse, J., concurred.